THE PEOPLE, PLAINTIFF AND APPELLEE, *v.* BORGES, DEFENDANT
AND APPELLANT.

APPEAL from the District Court of Humacao in a Prosecution
for Carrying Arms.

No. 919.—Decided February 15, 1916.

CARRYING ARMS—LESSEE.—Section 2 of an Act to prohibit the carrying of arms,
approved March 9, 1905, as amended by the Act of March 12, 1908, does
not prohibit a lessee from carrying a revolver on the premises leased to
him.

ID.—HOMICIDE IN SELF-DEFENSE—SURRENDER OF WEAPON.—The mere fact that
the defendant stepped from his own land into the road in order to surrender
a revolver with which he had committed homicide in self-defense to an officer
of the law for whom he had sent, would not convert the lawful carrying of
the weapon into a crime, nor would he have been guilty of carrying pro-
hibited arms if instead of sending for the police he had proceeded in person,
with his revolver in his pocket, to the nearest police station in order to
inform the authorities of what had occurred and to deliver the weapon.

The facts are stated in the opinion.

*Mr. Juan B. Huyke* for the appellant.

*Mr. Salvador Mestre, fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Upon a trial for manslaughter, the evidence showing a
clear case of self-defense, defendant, appellant, was acquitted
in the District Court of Humacao by a jury under a per-
emptory instruction given by the court at the instance of
the *fiscal.* Subsequently an information was presented charg-
ing defendant with carrying a pistol and he now appeals from
a judgment of conviction of the offense last mentioned.

It is urged that the court erred, first, in overruling a plea
of former jeopardy and, second, in convicting the defendant,
inasmuch as it was fully shown by the evidence that the ac-
cused was at the time upon premises held by him under lease.

Under the view we take of the case we need not consider
the first ground of appeal.

Section 2 of an Act to prohibit the carrying of arms,
approved March 9, 1905, as amended by Act of March 12,
1908, page 79, reads as follows:

"Section 2.—The preceding section shall not apply to a person in actual service, as a militiaman, nor to a peace officer, holding office as judge, *fiscal,* marshal, deputy marshal or bailiff of the insular or federal courts, persons engaged in the guarding of prisoners while so employed, policeman, nor to a revenue officer in the discharge of official duty, nor to the keeping or carrying of arms by the proprietors, lessees, administrators, overseers, or watchman of a farm while on or within the same or while going to or returning from same, as well as while within their private houses or buildings under their care or guardianship; nor to a person engaged in the military or naval service of the United States, nor to persons carrying the United States mail, nor to persons charged with the custody of insular or municipal property or funds, as watchman or keepers, carrying a written authorization from the superior officer having the supervision of such property or funds; neither shall it apply to the carrying of ordinary folding pocket knives, having blades less than three inches in length; neither shall it apply to the instrument known as *machete,* when the same is being used or carried *bona fide,* by the owner or possessor thereof, as a necessary incident to his occupation; *Provided,* That the authorization given by this Act to owners, lessees, administrators, overseers or watchmen of agricultural properties, in order to be valid outside such premises, must be confirmed at the request of the parties concerned, by the respective municipal judges."

The testimony bearing upon the question raised under the second assignment, *supra,* is substantially as follows:

JUAN RÍOS RIVERA, an insular policeman: "That during the month of December, 1912, witness was stationed in the town of Naguabo and they came looking for him, informing him that a quarrel had occurred in the *barrio* Del Río; that witness and another policeman, Andino, set out for the place and when they arrived at the house of Simplicio Ojeda they found a man stretched upon the ground; that witness dismounted, asking who had had the quarrel, and then Borges came up and told him that it was he and delivered to him a revolver (describing and identifying it); that this occurred in the *barrio* Del Río, in the house of Simplicio Ojeda, of the town of Naguabo, in the *barrio* Del Río, in the *barrio,* on a road that leads to Humacao, and that the accused was under an orange or bitter orange tree." On cross-examination: "That he does not know whose property it is where this occurred; that he does not know the name of the owner; that he knows that Simplicio Ojeda lives there, but

does not know who owns the property; that he does not know whether it is rented to Marcelino Borges; that he does not know anything about that; that everybody travels over that road, but the property where Borges was is below (*está a la parte abajo*), and the road traverses the property at one place." To questions by the court: "That it was witness who took the revolver and he took it from Marcelino Borges in the road that leads from Río Blanco to Humacao, near the house of Simplicio Ojeda, and that this was in the *barrio* Del Río,.. in December of last year." Upon further cross-examination: "That this was upon the arrival of witness there; the deceased was thus, and he drew the revolver to deliver it; that he drew it from the pocket."

JUAN VALENTÍN: "That he knows Marcelino Borges, Jr.; that in December, 1914, witness saw that Tinito Maldonado had a revolver and Tinito Borges also had one, and Tinito Maldonado was looking for trouble with him; he it was who sought it, Tinito Maldonado with him, with his arm; that witness saw Marcelino Borges with a revolver and witness saw when the policeman Ríos came up and Tinito Borges delivered the revolver to the policeman; that Tinito Borges is Marcelino (indicating the accused); that when Tinito Borges delivered the revolver to the policeman he was near the house, on the property, in the road, in the road leading to Naguabo from Humacao, on his property; that he saw the revolver but does not know what kind it was; that witness knows that Tinito Maldonado had one and he the other, and Tinito Maldonado it was who sought the difficulty on the property of the accused; that Tinito Maldonado was simply looking for trouble with him and for that reason things happened as they did and he was killed." To questions by the court: "That Tinito Maldonado first fired three shots and he (indicating the accused) fired four, and Tinito Maldonado fell at the last." On cross-examination: "That the accused was upon his own property, the property of Marcelino." To questions by the court: "That witness knows that that is the property of the accused because all of that belongs to the father and also to him."

SIMPLICIO OJEDA: "That in December, 1914, the accused was carrying a revolver which he delivered to the policeman Juan Ríos: that the revolver was taken from him upon his property, upon the property of Don Antero Santana which Borges had rented from him, four *cuerdas;* that when Marcelino Borges delivered the revolver to the policeman the latter was in the alley in front of the road." Upon cross-examination: "That Borges had four *cuerdas* of that

property under lease, and that witness saw that Borges drew the revolver from his pocket and delivered it to the policeman; that he took it from his pocket."

MARCELINO BORGES: "That upon the day of the Tinito Maldonado affair, witness used an arm in self-defense (identifying it); that when the policeman arrived witness delivered it to him without being asked for it; that he delivered the arm to the policeman without being asked for it; that witness was within an alley that lies between a dwelling-house and a store (*tienda*) that belongs to a property that he has under lease, a property belonging to Antero Santana; that witness is in possession of that property since December 31 of last year, for three years; that the agreement expires next year; that they made a contract in writing (identifies the contract); that it was within that property that the facts occurred, and that witness advised the policeman of what had just happened; that witness sent for the policeman and in person delivered the revolver and explained to him what had happened." Upon cross-examination: "That when the policeman arrived witness delivered the revolver to him and after having delivered the revolver witness went under a bitter orange tree; that the policeman came to where witness was; that the policeman came along the road on horseback, and that witness was about two *varas* distant from the road, in the alley." Upon redirect examination: "That the road is a road through the property; that it belongs to the property." To questions by the court: "That the arm was not taken from witness in the road; no, sir, it was off the road, in the alley between the two houses, the house and the *tienda*, halfway between the two houses; that the road also belongs to the property; that it is a road through the property."

The written agreement of lease was also introduced.

It is difficult to conceive how in the face of this testimony, corroborated by such documentary evidence, the trial judge avoided the conclusion that defendant was upon his own premises both at the time of the difficulty and at the time of the arrival of the police. But, be this as it may, the mere fact, if it be a fact, that defendant stepped from his own land into the road in order to deliver the weapon with which he had defended his life to an officer of the law would not convert the lawful carrying of the arm into a crime.

It is neither charged nor sought to be established, either

by the evidence or in the argument by the *fiscal,* that the offense of which defendant was convicted was committed at the time of the killing. On the contrary, the *fiscal,* in order to sustain the judgment upon the theory of a conflict in the testimony, insists that the testimony of at least one witness, Juan Valentín, refers to the moment of the shooting and not to the time of delivery of the revolver. Not only is it thus substantially conceded that the killing occurred upon defendant's premises, but any possible question as to the unlawful carrying by a defendant of a concealed weapon at that time is entirely eliminated.

The evidence is uncontradicted that defendant, after killing a man in self-defense, sent at once for the police, quietly awaiting their arrival at the scene of the combat, and, upon such arrival, promptly identified himself as the slayer and surrendered his weapon. This was his plain duty under the circumstances and any other course would have been construed as evidence of guilt. If instead of sending for the police he had proceeded in person, with the revolver in his pocket, to the nearest police station in order to notify the authorities of what had occurred and to deliver the weapon, he would not have been guilty of the offense charged. 8 R. C. L., p. 288, section 309; *Foster* v. *State,* 126 S. W. 1155; *Britton* v. *State,* 124 S. W. 684; *Miles* v. *State,* 108 S. W. 378; *Fitzgerald* v. *State,* 106 S. W. 365.

The judgment of conviction therefore must be reversed and the defendant discharged.

*Reversed.*

Chief Justice Hernández and Justices Wolf and Aldrey concurred.

Mr. Justice del Toro took no part in the decision of this case.